UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Hanifi Marlow Jihad,** | Civil No. 09-CV-1604 (SRN/LIB) |
| **Plaintiff,** | ORDER |
| v. | |
| Commissioner Joan Fabian, Asst. Commissioner David Crist, MCF Stillwater Warden John King, Assoc. Warden Eddie Miles, Program Director Bruce Julson, Program Director David Reishus, Religious Coordinator Gregory Skrypek, Chaplain Norris Blackmon, and Michelle Smith, Associate Warden of Operations, | |
| **Defendants**. | |

Hanifi Marlow Jihad, MCF-Stillwater, 970 Picket Street North, Bayport, Minnesota 55003, pro se.

Angela Behrens, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, Minnesota 55101, for Defendants.

_____

SUSAN RICHARD NELSON, United States District Judge

  This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Leo I . Brisbois dated February 17, 2011 [Doc. No. 194]. In the R&R, Magistrate Judge Brisbois recommended that this Court grant in large part and deny in part Defendants' Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, grant in part and deny as moot in part two Defendants' joint Motion to Dismiss, and deny

1

Plaintiff's Motion to Strike. Plaintiff and Defendants Fabian,[1] Smith, and Reishus all filed timely objections to the R&R.

According to statute, the Court must conduct a de novo review of any portion of the Magistrate Judge's opinion to which specific objections are made. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b). Based on that de novo review, the Court adopts the R&R.

I.      BACKGROUND

Plaintiff Hanifi Jihad, f/k/a Marlow Devette Jones, was convicted of first-degree murder and is serving a life sentence in Minnesota state prison. He is currently incarcerated at the Minnesota Correctional Facility in Stillwater ("MCF-Stillwater"), and many of the Defendants are connected with that facility. Other Defendants are officials with the state Department of Corrections ("DOC").

The Final Amended Complaint raises claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1 et seq.; 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendment to the United States Constitution; and Article I, Section 16 of the Minnesota Constitution. (Final Am. Compl. at 1-2 [Doc. No. 120].)

Plaintiff contends that he is a Muslim and that certain policies at MCF-Stillwater have infringed his right to freely practice that religion. In particular, the Final Amended Complaint alleges the following:

(1)     In September 2008, Plaintiff attempted to put on his prayer cap, known as a kufi, in the

---

[1] Defendant Fabian has retired from her former position as Commissioner of the Minnesota Department of Corrections. Under Rule 25, the new Commissioner, Tom Roy, is substituted for Fabian as to Plaintiff's official-capacity claims. Fed. R. Civ. P. 25(d).

(2) prison yard. The corrections officer in charge told him that only state-issued hats, baseball caps purchased from the canteen, or headbands could be worn in the yard. He told the officer "that it was [his] Islamic Faith to cover [his] head in public eye." (Id. ¶ 12, at 10.) The officer continued to refuse to allow Plaintiff to wear the kufi. Plaintiff pursued a grievance regarding this incident through appropriate prison channels, contending that the policy constituted an unlawful burden on the free exercise of religion. (Id. ¶¶ 13-18, at 10-11.) MCF-Stillwater Warden John King ultimately upheld the policy, and Plaintiff's appeal to DOC Commissioner Fabian was similarly unavailing. (Id. ¶¶ 19-24, at 11-12.)

(2) In December 2009, Plaintiff submitted an inmate request for halal meals. (Id. ¶ 28, at 13.) Halal is a term used to designate food that is prepared in a manner consistent with Islamic law. See http://dictionary.reference.com/browse/halal (last visited Apr. 21, 2011). The prison refused to provide him with halal meals, contending that he could comply with Islamic law by eating the prison's vegetarian meals. As with the prayer-cap issue, Plaintiff exhausted the institution's grievance procedure with respect to this claim. (Final Am. Compl. ¶¶ 30-31, at 13-14.)

(3) In January 2010, Plaintiff filed a grievance regarding his inability to observe two Islamic festivals, known as Eids, per year, as opposed to just one. Pursuant to a DOC policy permitting each religious group at the facility to select one religious holiday per year to celebrate with a special meal, the Muslim inmates at MCF-Stillwater have selected Eid-al-Fitr. (Second Affidavit of R. Joseph Hobson ¶ 7 [Doc. No. 166].) Plaintiff s seeks to additionally observe Eid-al-Ahda with a special holiday meal. (Id. ¶ 33, at 14) (citing

Offender Grievance Form #4002, Ex. 2 to Second Affidavit of Kim Ebeling [Doc. No. 165-1, at 24].)  Plaintiff's grievance was dismissed at the institutional level and on appeal.  (Id. ¶¶ 33-34, at 14.)

(4)  Plaintiff also alleges that Islamic religious services are cancelled on state holidays, for which he unsuccessfully sought administrative relief.  (Id. ¶¶ 14-24, at 10-12) (citing Offender Grievance Form # 3725, Ex. 1 to Second Ebeling Aff. [Doc. No. 165-1, at 2-23].)

Although not mentioned in the body of the Final Amended Complaint, that pleading's "Request for Relief" section seeks relief for other alleged violations of Plaintiff's rights, which Defendants and the R&R addressed. (See R&R at 2 (noting that it was "[c]onstruing Jihad's pro se submissions liberally . . .").)  Those claims include:

(1)  A claim that Plaintiff is not allowed to perform his five daily prayers outside his cell, which contains a toilet, when Islam allegedly requires him to pray out of the presence of a toilet.  (Final Am. Compl. ¶ 46, at 17.)

(2)  A challenge to the policy requiring that a non-corrections-officer volunteer be present at all group religious services, so that the absence of such a volunteer requires the cancellation of the services.  (Id.)

## II.   DISCUSSION

Before addressing the merits of Plaintiff's claims, there are several threshold issues to be resolved: sovereign immunity, the Motion to Dismiss for lack of service, and Plaintiff's claims under the Minnesota Constitution.

4

### A. Sovereign Immunity

First, Plaintiff seeks relief in the form of monetary damages, and because all of the Defendants are Minnesota state employees and are sued, in part, in their official capacities, the Court must determine whether sovereign immunity bars Plaintiff's requested monetary relief. The R&R determined that it did, and Plaintiff objects to this conclusion. Because he alleges that Defendants "intentionally and knowingly violated Plaintiff Jihad's Constitutional, Statutory and Minnesota State laws," Plaintiff contends that the Court should find that they were acting outside the scope of their employment and should decline to apply sovereign immunity. (Pl.'s Obj. at 2.)

But Defendants' state of mind is not relevant to the sovereign immunity inquiry. As Defendants point out, state of mind might be relevant to a determination of qualified immunity, but qualified immunity is not at issue in this case. Rather, sovereign immunity is a constitutional mandate that no state can be subject to a suit for damages in federal court without its consent or explicit cancellation of that immunity by Congress. U.S. Const. amend. 11. Because state employees sued in their official capacity are considered to be the state itself, the Court must determine whether the state has either consented to be sued on the types of claims Plaintiff brings, or whether Congress has lifted the states' immunity as to these claims.

It is clear that the state has not consented to suit under either the RLUIPA or 42 U.S.C. § 1983. (R&R at 12.) Nor has Congress abrogated the states' immunity under either of these statutes. Thus, Plaintiff's claim for damages against Defendants in their official capacities is dismissed.

### B. Motion to Dismiss

Plaintiff also argues that the Magistrate Judge erred in recommending that the Court

5

grant Defendant Skrypek's Motion to Dismiss [Doc. No. 144].[2]  Plaintiff contends that he served Skrypek at his "last known residence or place of employment."  (Pl.'s Obj. at 6.)  But as the R&R discussed, the Rules provide that service, if not personally made on the individual, may be made at an individual's home, not at a place of employment.  (R&R at 44.)  And given that Skrypek retired from DOC prior to the institution of this lawsuit, Plaintiff's attempt to serve him at the prison was clearly ineffective.

Plaintiff has failed to effect service of process on Defendant Skrypek.  As such, he must be dismissed from this lawsuit.  Plaintiff's Motion to Strike the Motion to Dismiss [Doc. No. 152] is likewise denied.

### C.    Minnesota Constitution

Finally, the Final Amended Complaint purports to raise a claim under the Minnesota Constitution's freedom of conscience clause, Article 1, Section 16.  The R&R recommended dismissal of this claim, concluding that there is no private right of action under this clause.  (R&R at 17.)   Plaintiff has not specifically objected to this ruling, although he continues to maintain that Defendants violated "Minnesota State laws."  (Pl.'s Obj. at 2.)  Thus, the Court will proceed as if Plaintiff had raised an objection to the R&R on this point.

The Minnesota Legislature has not enacted a statute similar to 42 U.S.C. § 1983, which allows civil lawsuits for violations of the U.S. Constitution.  Nor has any Minnesota court recognized a private cause of action for a violation of the Minnesota Constitution.  (See R&R at

---

[2]  The Motion to Dismiss was brought by Defendants Blackmon and Skrypek based on insufficient service of process but, as the R&R noted, Blackmon subsequently entered an appearance and joined in the Motion for Summary Judgment, thus apparently waiving his service-of-process objection.  The R&R thus recommended denying Blackmon's Motion to Dismiss as moot, and Blackmon did not object to this recommendation.

17 (citing cases).)  Thus, Plaintiff's claims under the Minnesota Constitution must be dismissed.

### D. Free Exercise Claims

Plaintiff's main claim is a contention that Defendants' actions and policies have infringed his right to freely practice his religion.  The free exercise of religion is protected both by the U.S. Constitution and the RLUIPA.  As the R&R noted, however, because the legal analysis of policies affecting religion is stricter under the RLUIPA than under the Constitution, if Plaintiff can succeed in establishing a probable violation of the RLUIPA, he can also establish a violation of the Free Exercise Clause. (R&R at 14) (citing Gladson v. Iowa Dep't of Corrections, 551 F.3d 825, 831 (8th Cir. 2009)).  Thus, the Court will examine Plaintiff's claims using the RLUIPA standards.

The RLUIPA prohibits any government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , unless the government demonstrates that the imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling interest." 42 U.S.C. § 2000cc-1(a).  To show a "substantial burden" on the exercise of religion, Plaintiff must show that the challenged activity "significantly inhibit[s] or constrain[s] [religious] conduct or expression . . . ; [] meaningfully curtail[s] a person's ability to express adherence to his or her faith; or [] den[ies] a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." Murphy v. Missouri Dep't of Corr., 372 F.3d 979, 988 (8th Cir. 2004); see also Van Wyhe v. Reisch, 581 F.3d 639, 656 (8th Cir. 2009) (quoting Murphy test with approval).

If Plaintiff can establish a substantial burden, Defendants must then show that the policy

at issue is "the least restrictive means to further a compelling governmental interest." Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997). Because in a prison case the maintenance of institutional security is at issue, the Court "must give the prison officials wide latitude within which to make appropriate limitations." Hamilton v. Schriro, 74 F.3d 1545, 1554 (8th Cir. 1996).

As discussed previously, Plaintiff claims that Defendants have imposed a substantial burden on his religious exercise by: (1) denying his request to perform his daily prayers (salat) outside of his cell; (2) failing to provide him with halal meals; (3) refusing to allow him two special holiday meals per year; (4) prohibiting him from wearing his prayer cap outside of his cell; (5) requiring the presence of a volunteer at all group religious services and cancelling those services if no volunteer is available; and (6) cancelling religious services on state holidays. The R&R recommended granting Defendants' Motion for Summary Judgment on all of these claims except the halal meals claim against Defendants Fabian, Smith, and Reishus.

### 1.   Praying outside cell

In the Final Amended Complaint, Plaintiff seeks relief permitting him to perform salat outside of his cell, and specifically outside the presence of a toilet. (Final Am. Compl. ¶ 46, at 17.) In his objections, he contends that because he can lie on the floor of the gym or in the yard to do sit-ups, he should not be prohibited from performing his daily prayers in the gym or the yard. (Pl.'s Obj. at 2-3.)

The parties and the R&R assumed, for the purpose of Defendants' Summary Judgment Motion, that Plaintiff could show a substantial burden.[3] Thus, this Court focuses on whether

---

[3] Ultimately, Plaintiff may not succeed in establishing a substantial burden, because simply requiring Plaintiff to perform salat in his cell may not "significantly inhibit or constrain" Plaintiff's religious conduct, "meaningfully curtail [Plaintiff's] ability to express adherence to

8

Defendants' policy is narrowly tailored to further a compelling interest.

Institutional security is "the most compelling governmental interest in a prison setting." Ochs v. Thalacker, 90 F.3d 293, 296 (8th Cir. 1996). "We accord great deference to the judgment and expertise of prison officials, 'particularly with respect to decisions that implicate institutional security.'" Murphy, 372 F.3d at 983 (quoting Goff v. Graves, 362 F.3d 543, 549 (8th Cir. 2004)). Plaintiff challenges Defendants' showing that compelling interests necessitate the policy at issue, but he does so without any factual support. He contends that inmates are out of their cells all day, every day, apparently asking the Court to conclude that allowing Muslim inmates to pray outside their cells would not result in any additional movement of inmates. But the Court must defer to the judgment of prison officials on this issue. To permit Muslim inmates to move around the facility, with greater access to public areas than that is given to other inmates, implicates institutional security and order. And, as the R&R found, no other alternative would prevent a significant increase in the number of inmate movements within the facility each day. (R&R at 19.)

Defendants have met their burden as to Plaintiff's salat claim. This claim is therefore dismissed.

---

his [] faith," or "deny [Plaintiff] reasonable opportunities to engage in those activities that are fundamental to [his] religion." Murphy, 372 F.3d at 988. The Eighth Circuit has held that an inmate "need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so." Id. at 983.

2.   Halal meals

The R&R found that Plaintiff had succeeded in establishing genuine issues of material fact as to whether Defendants' refusal to provide Plaintiff with halal meals was narrowly tailored to serve a compelling governmental interest. Defendants object to this determination. Plaintiff also objects, arguing that the Magistrate Judge should have granted his motion for summary judgment on this claim.

In analyzing a Free Exercise Clause and RLUIPA claim, courts consider whether, as a threshold matter, the challenged action infringes upon a sincerely held religious belief. Murphy v. Missouri Dep't of Corr., 372 F.3d 979, 988 (8th Cir. 2004) (RLUIPA); Love v. Reed, 216 F.3d 682, 687 (8th Cir. 2000) (Free Exercise Clause). Next, under both the Free Exercise Clause and RLUIPA, a plaintiff must raise a material question of fact as to whether the defendants have placed a "substantial burden" on the ability to practice one's religion. Weir v. Nix, 114 F.3d 817, 820 (1997) (Free Exercise Clause); 42 U.S.C. § 2000cc-1(a) (RLUIPA). Demonstrating a substantial burden requires that the regulation

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

Patel v. United States Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008) (quoting Murphy, 373 F.3d at 988).

Defendants argue that the R&R improperly "reframed" Plaintiff's halal meal claim into a claim that he failed to assert – namely, a claim for pre-packaged halal meals. (Defs.' Obj. at 2-3 [Doc. No. 195].) The Court disagrees. In the R&R's thorough analysis of Plaintiff's halal

meals claim, the Magistrate Judge found that genuine issues of material fact remain as to whether the meal options available at MCF-Stillwater cause Plaintiff to consume food in violation of his religious beliefs. (See R&R at 26-28.) In reaching his conclusion, the Magistrate Judge carefully considered the parties' opposing arguments and evidence. Defendants maintain that the existing DOC meal options are consistent with a halal diet, because the vegetarian offerings do not contain pork. Plaintiff, however, argues that in order to be considered halal, food must not come in contact with pork at any stage, including fruit or vegetables grown in soil fertilized by hog manure, or other animals raised on pork by-products in their feed. In the Final Amended Complaint, Plaintiff alleges that he requested halal meals and that his request was refused pursuant to the DOC's administrative procedure. (Final Am. Compl. ¶¶ 27-31 [Doc. No. 120].) The Final Amended Complaint specifically references Plaintiff's Offender Grievance #4009, which the DOC summarized as follows: "In your grievance, you request MCF-[Stillwater] provide you Halal meals three times a day, every day for the remainder of your incarceration as your religion prohibits you from consuming food that contains pork, pork by-products, or anything grown or harvested in conjunction with pork." (Grievance Report #4009 at 1, Ex. 3 to Second Ebeling Aff. [Doc. No. 165-1].) Defendants' own summation of Plaintiff's halal meals claim – found in a document referenced in the Amended Complaint – was the very issue addressed by the Magistrate Judge and was not in any way "reframed."

In the R&R's analysis of whether the challenged action infringed upon Jihad's sincerely held religious beliefs, the Magistrate Judge correctly observed that "'the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.'" (Id. at 26) (citing Love, 216 F.3d at 688 (quoting Thomas v. Review Board of the Indian

Employment Security Division, 450 U.S. 707, 715-16 (1981)). "Moreover, whether or not an asserted belief constitutes "a sincerely held religious belief is a factual determination, so we must not quickly dismiss such claims on summary judgment by concluding that those beliefs are not genuine." (R&R at 26) (citing Murphy, 372 F.3d at 983.) In Love, the Eighth Circuit found that while an inmate's self-proclaimed adherence to the "Hebrew religion" might not "fit squarely with the orthodoxy of Judaism," it was nonetheless a religion, and the prison's refusal to provide food from the facility's kitchen for consumption in his cell on his sabbath day substantially burdened his religious beliefs. 216 F.3d at 687-88. Similarly, in Abdulhaseeb v. Calbone, 600 F.3d 1301, 1314 (10th Cir. 2010), the Tenth Circuit found that the issue before it was "not whether the lack of a halal diet that includes meats substantially burdens the religious exercise of any Muslim practitioner, but whether it substantially burdens *Mr. Abdulhaseeb*'s own exercise of his sincerely held religious beliefs." (emphasis in original). The court further commented, "Neither this court nor defendants are qualified to determine that a non-pork or vegetarian diet *should* satisfy Mr. Abdulhaseeb's religious beliefs." Id., n. 7 (citations omitted). The court found no evidence in the record that the plaintiff did not sincerely hold his belief that he should eat a halal diet that includes meats, even though other Muslims might find a vegetarian or non-pork diet sufficient to satisfy Islam. Id.

Here, the Magistrate Judge acknowledged Defendants' arguments and evidence challenging the sincerity of Jihad's beliefs, acknowledging that there "may be some cause to believe that Jihad's request may not be entirely sincere." (R&R at 27.) However, courts should "hesitate to make judgments about whether a religious belief is sincere or not," Murphy, 372 F.3d at 988, and the Magistrate Judge properly concluded that this was a factual dispute that

could not be resolved on summary judgment.

When addressing the next step of the analysis in RLUIPA claims, substantial burden, an important factual issue that courts frequently consider is whether the prison's commissary provides any of the requested special dietary food for purchase. In Love, the Eighth Circuit noted that while pre-packaged, special dietary food was available in the commissary, the prisoner was indigent and generally unable to buy such food, therefore the option was essentially unavailable. 216 F.3d at 690; see also Abdulhaseeb, 600 F.3d at 1317-18 (prisoner not given the opportunity to purchase special dietary food, and in any event, prisoner was indigent). However, in Patel, while the prison's commissary provided four halal vegetarian entrees, and Patel argued that they were cost-prohibitive, the Eighth Circuit found that Patel had neither pleaded nor provided evidence of his indigence. 515 F.3d at 811.

Courts have distinguished Patel on the facts when the special dietary meal in question is not offered at all. Toler v. Leopold, No. 2:05CV82 JCH, 2009 WL 926533, at *2, n. 7 (E.D. Mo. Apr. 3, 2008) (Following a bench trial on the denial of a Jewish inmate's request for kosher meals, the district court found a substantial burden, where the prisoner had no option of purchasing kosher meals from the commissary, as they were not offered, distinguishing Patel.) Here too Patel appears to be factually distinguishable, because, to the Court's knowledge, pre-packaged halal meals are not offered for sale in the commissary at MCF-Stillwater.

The Magistrate Judge discussed pre-packaged halal meals in the limited context of whether Defendants had met their burden of proof in showing that their meal policy was narrowly tailored to achieve a compelling governmental interest. (R&R at 29-31.) The R&R did not restate Plaintiff's halal meals claim as a claim requiring the provision of pre-packaged

13

halal meals. Rather, as discussed above, the Magistrate Judge understood the claim as a claim requiring the provision of halal meals, albeit subject to the parties' different interpretations of halal. As to Defendants' objections to the R&R's handling of any possible cross-contamination claims, this Court finds no error. The Magistrate Judge simply noted that the issue had not been adequately briefed, nor was it dispositive of the halal meals issue, in any event, and it was not otherwise discussed in the R&R. (Id. at 22, n. 10.) Because genuine issues of material fact remain as to the halal meals claim against Defendants Fabian, Smith and Reishus, Defendants' motion for summary judgment is denied as to this claim.

  Plaintiff also objects to the R&R for failing to grant him summary judgment on this claim. As discussed above, and as the R&R makes clear, genuine issues of material fact abound, including whether Plaintiff's religious belief is sincerely held. The parties differ widely in their understanding of what is required of halal meals – an understanding that may be fundamental to the resolution of Plaintiff's claim. Moreover, regardless of the parties' different interpretations, issues of fact remain in dispute as to whether the Defendants' meal policy is narrowly tailored to achieve a compelling governmental interest. (R&R at 29.) Defendants submitted the Affidavit of Sheila Packwood [Doc. No. 167], a DOC dietitian, addressing the DOC's interpretation of halal and describing the extent to the DOC has considered Plaintiff's broader interpretation of a halal diet. Plaintiff advanced a different interpretation of halal and has challenged whether the DOC's policy is narrowly tailored. In light of this factual dispute, Plaintiff is not entitled to judgment as a matter of law on his halal meals claim. His motion for summary judgment is therefore denied.

### 3. Holiday meals

The prison maintains a policy that each religious group may designate one holiday per year during which the prison will allow all inmates of that faith to have a special meal. The Muslim inmates at MCF-Stillwater have chosen to commemorate Eid-al-Fitr, which marks the end of the Muslim holy month of Ramadan. Plaintiff would like the prison to allow Muslims an additional special meal, to commemorate the end of the annual Hajj pilgrimage to Mecca, Eid-al-Ahda. Plaintiff contends that he would pay for a second special meal, thus alleviating Defendants' professed compelling interest in having only one special meal. (Pl.'s Obj. at 4.)

Plaintiff's argument misapprehends the nature of the compelling governmental interest underlying the one-holiday-meal policy. While it is true that Defendants contend that the cost of providing two special meals would be a hardship, the main reason for the policy is not only the cost, but also the need to maintain institutional order. Allowing one religious group to have two meals when all other groups are allowed only one would likely create animosity between groups. And if the prison allows Muslims two holiday meals, it must likely allow other groups more than one meal, and the strain of those meals on the prison's budget is not alleviated by Plaintiff's offer to pay for the second Muslim meal. See, e.g., Turner v. Safley, 482 U.S. 78, 90 (1987) ("When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials."). Defendants have established that their one-holiday-meal policy is narrowly tailored to serve a compelling governmental interest, and it therefore does not violate the RLUIPA.

### 4. Prayer cap

In the Final Amended Complaint and Plaintiff's grievances, he challenges the prison's policy that only state-issued headwear may be worn outside of the chapel or his cell. In his objections, Plaintiff reasserts that the prison's refusal to allow him to cover his head within the prison (but outside his cell) substantially burdens the exercise of his religious beliefs. (Pl.'s Obj. at 4-5.) The R&R concluded that DOC's policy does not entirely prohibit Plaintiff from covering his head while in the public eye, but only prohibits him from wearing his personally preferred headwear outside of the chapel or his cell. (R&R at 35.) The Magistrate Judge correctly found that Plaintiff failed to establish that not being allowed to wear a kufi, as opposed to the readily available state-issued headwear, substantially burdened his religious exercise. (Id.) (citing, inter alia, Rogers v. Scurr, 676 F.2d 1211, 1216 (8th Cir.1982)(finding no constitutional violation in policy prohibiting prayer caps and robes outside religious services.)) Plaintiff's primary concern, as noted in the R&R, was being able to cover his head in public, and the DOC policy does not prohibit this, nor does Plaintiff claim that the state-issued headwear is inadequate for religious reasons. (Id.) Even if the policy did constitute a substantial burden, Defendants have established that the policy is narrowly tailored to further a compelling governmental interest – the compelling interests of prison safety and security justify uniform dress regulations. Because the policy still allows plaintiff to cover his head, albeit not with his preferred headcovering, it does not substantially burden his religious exercise. This portion of his claim is dismissed.

     5.    <u>Volunteers at religious services</u>

Prison policy requires a non-corrections-officer volunteer to be present during all group religious services. According to Defendants, this policy serves to prevent inmates from

supervising other inmates, thus forestalling potential conflicts between inmates. (R&R at 38.) Plaintiff argues that the policy is unnecessary, contending that he and other Muslim inmates lead all Muslim group services and the volunteer serves only as a de facto security guard, an unnecessary addition to the corrections officer already assigned to the group service to provide security. (Pl.'s Obj. at 5.) Moreover, he complains that services are cancelled when a volunteer is not available.

The R&R correctly determined that this policy does not constitute a substantial burden on Plaintiff's exercise of his religion. (R&R at 37-38 (citing, inter alia, Adkins v. Kaspar, 393 F.3d 559, 571 (5th Cir. 2004) (holding that prison's requirement that outside volunteer be present at religious ceremonies does not place substantial burden on inmates' religious practices)).) Although the cancellation of services when a volunteer is unavailable may curtail Plaintiff's group religious experiences for the day of the cancellation, it does not meaningfully curtail or significantly inhibit Plaintiff's ability to practice his religion, nor does it deny him the opportunity to do so. Services are not cancelled every week, but only when a volunteer is not available. Plaintiff may still pray and engage in other religious activities in his cell. Although he may prefer communal worship, the denial of that privilege on occasion simply is not a substantial burden on Plaintiff's religious rights.

Even if the cancellation of occasional services constituted a substantial burden, Defendants have established that the volunteer policy is narrowly tailored to further a compelling interest. Again, Defendants' paramount interest is security and order within the prison. Defendants have determined that having an additional non-prisoner attend each group religious service is beneficial for a host of reasons, all valid and compelling. That the requirement appears

unnecessary to Plaintiff does not make the requirement in fact unnecessary. Defendants have succeeded in establishing that the volunteer requirement is the least restrictive means to further a compelling governmental interest, and Plaintiff's claim on this issue is dismissed.

      6.      <u>Cancelling religious services on public holidays</u>

Plaintiff does not specifically raise this issue in his Objections under a RLUIPA theory and the R&R addresses this issue as part of Plaintiff's equal protection claim. (R&R at 40.) Giving Plaintiff the benefit of the doubt, assuming that he intended to assert this claim under both the RLUIPA and the Equal Protection Clause, the Court will consider this claim under both theories. Under the RLUIPA, this Court finds that the cancellation of religious services on public holidays does not constitute a substantial burden on Plaintiff's exercise of his religious rights, and further it is narrowly tailored to further a compelling governmental interest. As in the previous discussion, the occasional cancellation of religious services does not deny Plaintiff his ability to practice his religion. In addition, group religious services require a non-corrections-officer volunteer, who may be a member of the public, to be screened and escorted into the facility. During public holidays, however, there are fewer staff members in the prison to perform these duties. Therefore, the cancellation of services limits the number of public citizens in the prison during a time of short staffing, helping to maintain institutional security and order. Plaintiff's claim on this issue is dismissed.

    **E.**    **Equal Protection Claim**

Plaintiff contends that the volunteer requirement and the cancellation of services on public holidays violate his right to equal protection of the laws under the 14th Amendment. The R&R found that these claims were without merit. (R&R at 40.) Plaintiff objects, arguing that

"Discrimination and disparity of treatment in any form for race, religion, creed is violation of Equal Protection clause." (Pl.'s Obj. at 5.) Plaintiff's objections misapprehend the nature of an equal protection claim.

To maintain an equal protection claim, Plaintiff must show that he (or Muslims) have been treated differently than other religious groups. See Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) ("The heart of an equal protection claim is that similarly situated classes of inmates are treated differently . . . .").) But the policies of which he complains are policies that apply to all religious groups within the prison, not just Muslims. The groups to which Plaintiff attempts to compare himself, such as prison sports teams, are not similarly situated to religious groups. Because he has failed to show that Muslims were discriminated against when members of other religions were not, his equal protection claim fails.

### III.   CONCLUSION

Defendants have established that they are entitled to summary judgment on all of the claims in the Final Amended Complaint, with the exception of Plaintiff's halal meals claim against Defendants Smith, Fabian and Reishus.  Plaintiff has failed to establish that he is entitled to summary judgment.

With respect to the halal meals claim, the Court refers Plaintiff to the Pro Se Project of the Minnesota Chapter of the Federal Bar Association ("FBA") and shall provide Plaintiff with contact information via letter. The Pro Se Project seeks to find lawyers who can assist individuals who are unrepresented but have claims pending in court. This referral contemplates representation limited to assisting Plaintiff in reaching a settlement of his claim or continuing with an evidentiary hearing to resolve the factual issues which remain regarding the provision of

halal meals. All matters are stayed until Plaintiff obtains counsel. Once counsel for Plaintiff files an appearance, the parties are ordered to contact Magistrate Judge Brisbois to schedule a settlement conference.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Magistrate Judge Brisbois's Report and Recommendation (Doc. No. 194) is **ADOPTED**;
2. Plaintiff's claim for damages against Defendants in their official capacities, and his claim for damages under the RLUIPA, are **DISMISSED**;
3. The Motion to Dismiss (Doc. No. 144) is **GRANTED** as to Defendant Skrypek and **DENIED as moot** as to Defendant Blackmon;
4. The Motion to Strike (Doc. No. 152) is **DENIED**;
5. Plaintiff's claims under the Minnesota Constitution are **DISMISSED**;
6. Plaintiff's Motion for Summary Judgment (Doc. No. 131) is **DENIED**;
7. Defendants' Motion for Summary Judgment (Doc. No. 162) is **GRANTED in part, and DENIED in part**; and
8. Plaintiff's claims are **DISMISSED with prejudice**, with the exception of Plaintiff's halal meals claim against Defendants Smith, Fabian and Reishus; and
9. All other claims against Defendants Crist, King, Miles, Julson, Skrypek and Blackmon in the Amended Complaint are **DISMISSED with prejudice**.
10. Matters relating to the remaining halal meals claim are **STAYED** until Plaintiff obtains counsel.

Dated: May 2, 2011

                                               s/Susan Richard Nelson
                                               SUSAN RICHARD NELSON
                                               United States District Judge